Thank you. All right, I don't see Mr. Gilbert yet. I don't. He's on the line, Judge. We were in a private room together. So he was on Zoom. I'll give it just a minute. Sometimes computers will throw you off just when you don't want that to happen. There he is. Mr. Gilbert, are you here? Uh, yes. I don't see you yet, but I heard you. There we go. All right, fine. Our fourth case for today is Reginald Pittman against County of Madison, number 192956, and we will begin with Mr. Anderson. Thank you, Your Honor. On Wednesday, December 19, 2007, plaintiff Reginald Pittman, a pretrial detainee in the Madison County Jail, used a blanket to hang himself from the bars of his cell, causing brain damage. According to his suicide note, he hanged himself because the guards were effing with him and would not let him seek crisis. According to witness Bradley Banabese, who was detained in the adjacent segregation cell, on Friday, five days before the plaintiff's suicide attempt, plaintiff Reginald Pittman asked defendant Deputy Matthew Warner to refer plaintiff to crisis. Defendant Deputy Matthew Warner promised plaintiff that he would refer Pittman to crisis on the following Monday, even though he was not working the day shift at that time. Defendant Deputy Warner joked, you don't need to seek crisis, did not take Reginald Pittman seriously, and did not appear to believe Reginald Pittman, even though Pittman was obviously upset. This is all according to witness Banabese. Witness Banabese advised Warner, your boy over there needs help, and confronted defendant Deputy Matthew Warner with the fact that Warner would not be working the day shift on Monday and therefore could not fulfill his promise to refer Reginald Pittman to crisis. I'd like to direct you to the jury instructions because what you're highlighting goes to this question of what the officers knew, etc. Correct. So the jury instructions in paragraph two say defendant Eaton and Warner were aware of the strong likelihood that plaintiff would seriously harm himself or strongly suspected facts showing a strong likelihood. So the two-part test that we have, the new test, still leaves intact the first prong. We said that in McCann. So if that first prong involves the standard of purposefully, knowingly, or recklessly, I'm trying to kind of get at this question, even if the jury instructions didn't track exactly the language, we have to decide that they led the jury astray. So just on that prong, can you tell me how those standards were aware or strongly suspected facts deviate from purposely, knowingly, recklessly? Because there's not really any dispute here that they knew the facts. That's right. The dispute here is about why they didn't then make the referral to crisis. The dispute here has to do with their subjective knowledge. Now the jury instructions actually require that the plaintiff, in order to succeed, prove that they were aware that the plaintiff could seriously harm himself or that they strongly suspected facts and that they refused to confirm those facts and that they consciously failed to take reasonable steps. But this is my question. You're right. It says, you know, that they were aware of the strong likelihood that plaintiff would seriously harm himself. But then there's an or, and says, or strongly suspected facts. Well, they knew the facts. They knew that he'd had the crying jags. They knew that he requested crisis counseling. And then beyond that, and this is what Lake County altered, is the objective standard of what were the measures that they did take reasonable. And that seemed really the question in this case, because there's no dispute that they knew the facts. They didn't have to judge. I, I did. I now understand what you're saying. And I, and I disagree because based on their knowledge base and what they testified to defendant, Matthew Warner testified, he didn't know what a suicide crisis was. He didn't know what the suicide prevention policy was. He did not know what the signs and symptoms of a suicide risk was. He did not know the do's and don'ts published by the jail of helping a suicide risk and did not remember ever even reading the policies and procedures question of whether it was objectively reasonable to not refer him. His subjective lack of knowledge doesn't matter on that prong under the 14th amendment amendment standard we're holding. We're not asking, did you know that you should have and still not done it? Right. What we're asking the jury instruction. Oh, I beg your pardon. Well, the jury instruction on that score, as I take it is in the next paragraph where it says defendants eaten and, Werner consciously failed to take reasonably measures, reason, sorry, reasonable measures to prevent from harming himself. Now there's no question that they consciously consciously, excuse me, did not make the referral to crisis. But the question is, was it reasonable for them not to do so? And that's where your case is. They're saying it doesn't really matter if they knew about the jail procedures or not. Your argument is it was unreasonable for them not to refer based on the facts that they knew. That's correct. Well, that's right. And can I, can I just intervene there? Objectively. Mr. Anderson? Yes. I wanted to focus too on that word consciously in the third paragraph of the instructions because after Kingsley, after Miranda, after the line of cases that we've been developing, there, there, there's a component where the particular knowledge, let's say the subjective knowledge matters, but then there's the objective reasonableness as Judge Barrett was saying. And my question has been whether the use of that word consciously in the third paragraph somehow changes this from an objective inquiry. Would a reasonable person in their position have taken, you know, certain measures to prevent him from harming himself? Something like that. This says that he or Werner failed to take reasonable measures, but then it says consciously. And I wonder whether that really is much ado about nothing or whether it's an adequate, if not perfect, instruction. I, I think it's inadequate. I think that the, the, under the law, particularly when paired with the jury, must find that the defendants were aware that of serious harm or that they strongly suspected. And that's paragraph two. So the jury had that. The jury was asked, were they either personally aware that he might harm himself or did they strongly suspect that he might harm himself? And then sort of did nothing about it. So we have that element. Nothing about it. The Ninth Circuit, under the case, Gordon case that I cited, has now adopted as its pattern instruction, a, a, an instruction that is almost identical to the one that I submitted. Counsel, let me, let me, let me just kind of highlight this point for you. Whether or not Gordon better states what the law is post Kingsley in the cases that we've developed in Miranda and McCann, you have to show that the jury would have been misled. And my concern is even if it could have been said better, the question that I have is that the, the instruction says consciously failed to take reasonable measures. Well, no one doubts that they knew that they didn't report him to crisis. In fact, even after Werner said that he would, that he didn't do it. And the question really is, was that good enough for the jury to understand that the question is whether the measure measures were reasonable without regard to whether they thought they were acting reasonably? Because that's what Miranda and McCann filing Kingsley say that it's not the right question. Correct judge. But the jury instruction actually requires them to find that they were aware of the substantial risk and that they, or, uh, and that they consciously decided not to take steps, even though they were aware of it. And under these instructions, the jury could conclude that the actions of the defendants were in and of themselves reckless and harmful and inappropriate. In fact, their experts test, the defendants expert testified to that, but could have exonerated the defendants because the defendants as a result of their own actions and failing to acquaint themselves with the policy and suicide prevention. Mr. Anderson, it's Judge Scudder. Let me, let me, um, give the question one more shot because the question is, is, um, weighs on me here as well. Um, I know this isn't the way you would frame the question, but just bear with me. Okay. Yes, sir. Is the legal error in the instruction, the inclusion of a single word consciously in paragraph three, in your view, or is the legal error broader than that? And if so, what is it? The legal error is broader because, uh, it, uh, in paragraph two, it also requires that the, the jury find that defendant Warner and Eaton were aware that the plaintiff would be seriously harmed or that they strongly suspected. And that is a subjective, uh, uh, test, a strong likelihood that he would be seriously harmed and further that they refuse to confirm that. Those are all knowledge, subjective. Yes. It says strongly suspected facts showing a strong likelihood. And that's a little bit different, right? Because there's no, there's no question that they knew the facts. There might be a case where that would be a problem, but here, there's no doubt that they knew the facts. It wasn't that they failed to inquire about the facts. They knew that he had asked for crisis counseling. They knew that he'd had the crying Jags. They had the information. The problem is that they didn't act on it. Well, uh, uh, they actually promised that they would act on it, but didn't and did not. That's exactly right. But the fact that they, uh, strongly suspected facts, they have testified before the jury. And it was argued strenuously by a defense counsel that there was no way they could have all over this subjective instruction and went through an entire list of things that he said, defendants did not know that therefore they could not, uh, have been aware of any facts of any type or nature that would have created a risk of suicide or a substantial likelihood. And he repeated the term substantial likelihood in his argument only over and over that there would be any harm. And so, and furthermore, he, uh, conflated some of the current complaints with earlier complaints where he did not try to commit suicide. So his entire defense was based on the fact that the defendants did not subjectively have any knowledge that would alert them, put them on notice of a substantial likelihood of injury. And if you'll look at his argument, he just really focused on that paragraph too. And that's what he did. And he was very effective. Out of time. I'd like to ask you an evidentiary question. Cause I assume you'd like to save some time for rebuttal. Yes. Um, you point out, you know, this, what you say is an evidentiary error to not letting the witness, um, have pronounced his name benefits about the video record. I'm sorry. So you're, you're, you say that you wanted benefits to be able to testify about the video recording. Well, no, the video recording was played. No, I understand that. So, but what was your objection that you didn't, that you wanted benefits to be able to testify about the recording in some way? No judge. My objection was that every witness, the defendant's expert, uh, and the defendants testified that under their train, and this is in the earlier trial and it was presented to the court that there was a, uh, that it was deliberate indifference. If what Bannaby said was true. No, I understand that there was that objection. I thought maybe I misunderstood your brief. I knew that you had the objections to not permitting your experts to testify. There was deliberate. Oh, I see what you're saying. You also had another objection. Yes, I did. In footnote eight of the first, uh, case, uh, in 2012, the court said that Bannaby's could a footnote 38 that the court testified to Bannaby's could testify to other guards and what they knew over the weekend. And the judge in both their subsequent trials, I don't understand why that's not the law of the case. Frankly, uh, uh, I've never been able to get that information. And Bannaby's has, uh, said that the, uh, in addition to these two defendants, the other defendants also were, uh, aware generally that, uh, and that's under the state law claim that Madison County was vicariously liable. And the issue is whether the other, that statement comes in. I got a question on that. I got a question on that too. I wonder if, I wonder if I'm simplifying it too much. And if I am, please tell me, but I thought on the point that you just raised, it really wasn't any more complicated than the two defendants that went to trial, Eaton and Werner, were the defendants on which the facts that would be admitted are relevant. So whatever, uh, Banoff's said to some other guard is not relevant in a contended. That's true on the federal claim, but not on the state claim because Madison County is vicariously responsible for its influence no matter who they are. And the court in footnote 38 had said, yeah, it comes in. All right. I think you should stop now and we will pick up with rebuttal and we will turn to Mr. Gilbert. Thank you, Your Honor. May it please the court, Mr. Anderson. Of course, our position is that no new trials should be granted because the judge did not err. And there's nothing in this record that would lead to the conclusion that anything the trial court did affected the outcome of the case. Notwithstanding our argument that's, uh, that's in our brief that Mr. Anderson did not preserve his objection to the jury instruction, uh, we think the jury instruction, uh, is error free, essentially. So, Mr. Gilbert, let me pick up on a couple of those things. Under the circumstances of the way this district court chose to handle the, the drafting and objection process for the jury instructions, it looked to me as though Mr. Anderson did what he needed to do. Uh, and the judge said, you know, that fifth day, we're going to make a record now. So, I'm not too worried about, um, forfeiture at that point. What does concern me is that in the wake of Kingsley against Hendrickson and Miranda and McCann and subsequent cases, um, there's a more complex standard. And if you look at the district court's opinion, uh, after all is said and done on the, the motion for the new trial, it's, it's stated quite well, but the instruction to the jury is somewhat confusing with that word consciously, which sounds subjective, put back into paragraph three. And there are many other things that the district court also said that sounded an awful lot like an Eighth Amendment standard, which would have been a much more difficult burden. I mean, the, the, the jury might have found that these people were not deliberately indifferent to Mr. Pittman and yet found that the measures taken were objectively unreasonable. But the, the instruction is kind of a mishmash of the two different standards. And the question that I'm asking myself is whether when all is said and done, the problems are not problems that would have changed the outcome or if, if it is confusing enough, whether, uh, you know, one hates to go to round four, but you know, whether there's another round that should be done. Yeah. And I appreciate that question, Your Honor. And I think the judge had it right in her post-trial order when she said that the jury was clearly and correctly instructed that the plaintiff, in order for the plaintiff to succeed, they had to show, the plaintiff had to show that either Eaton or Werner were aware or should have been aware of the strong likelihood that Mr. Pittman would harm himself and fail to take reasonable measure. And my take on those instructions is that the consciously, uh, the word consciously in, in item three meets the requirement of Miranda and the cases subsequent to Miranda that they have to act knowingly. And that it has to do... But what does that do that paragraph two isn't doing? I guess maybe paragraph two is are they aware of the, either that he would seriously harm himself or the facts indicating that, um, the facts indicating the strong likelihood. Why, why isn't paragraph three, if you were drafting pattern instructions in the wake of Kingsley, which has not happened yet in this circuit, wouldn't you say for, for element three, Eaton and or Werner, um, uh, were objective, you know, were objectively unreasonable or, you know, somehow get that notion of the objective standard clearly before the jury? I'm not sure the jury realized it was being asked to do that. Well, I think in totality, uh, which is how we're supposed to take the instructions, that there is nothing in these instructions that would have kept the jury from determining that they didn't act objectively reasonably because reasonableness is all over these instructions. I mean, nobody's talked about the state law instructions, but they're based in reasonableness. And I think when you combine paragraphs two and three of the instruction on the federal claim, it doesn't, it did not mislead the jury such that the jury could not have ruled that they did not take reasonable, objectively reasonable measures because did you argue or did whoever represented your client below argue that the defendants could not be liable because they didn't know that they should have referred him to crisis counseling because they hadn't been trained on risk of suicide, et cetera. What I argued in closing arguments, your honor, was that the proof was insufficient to establish that they knew that he was at risk of imminent suicide when he made the attempt and that without that knowledge, they could not act, uh, objectively or in a way that wasn't objectively reasonable because they weren't aware of that risk. And so, because I think it's important, you know, as you pointed out in those subsequent cases, based on Miranda, you, you have to have more than negligence, of course, and even more than gross negligence. And it's got to be knowing reckless or purposeful, and it has to be, uh, objectively unreasonable. And I think these instructions taken as a whole did not mislead the jury such that if they believe the facts that plaintiff was putting forward, they easily could have ruled for plaintiff. Counsel, let me ask you a clarifying question about how you understand Miranda and McCann and this line of cases. Sure. Do you think that is what you were trying to get the jury, um, to find that they didn't appreciate that they, that they knew these signs, they knew that he had crying jags and he wanted crisis counseling, but that they were not in a position where they appreciated the significance of that? Is that your position? That because, you know, they're not psychiatrists, they hadn't had training, et cetera, so they didn't understand that that was enough to put him at risk? No, my actual point there was much more limited that on the day he made the decision to attempt suicide, that those two were not aware that he was at imminent risk of suicide because everybody knew that they knew those things that you just detailed prior to the time he attempted suicide. But on the days leading up to his attempt, my argument was that the evidence demonstrated, or at least the plaintiff had not proved, that they were aware of the risk of imminent suicide on the date in December of 2017 when he actually 2007 when he actually made the attempt. And so because we have a jury determination here, obviously the jury must have believed that the plaintiff did not meet his burden on the facts. Because on these instructions, I think it's eminently reasonable to conclude that had they decided that these jail officers did not take reasonable measures, they could have held them liable. Mr. Gilbert, it's Judge Scudder. Let me try to parrot some of that back to you and tell you what my worry is and you can talk me out of it. Okay? I'll try. It's this, that if you answer Judge Barrett's question as you just did, that no, no, no, no, no, no. They knew about the crime. They knew about the request to go to crisis. They knew about that. But what they did not appreciate consciously was that those two facts add up to suicide risk. If that's what you argued in substance, what I worry about, it just takes us back to the question we were talking about before, is the word consciously in paragraph three doing so much work kind of vis-a-vis the argument you just summarized, that it's effectively turning this in its totality into more of an eighth amendment instruction. It's too subjective. That's the worry that I have. And I understand that. And that's not, I guess, and I apologize for not articulating my point more clearly. My point is more limited than that. My point is that the claim is that they were, that they knowingly failed to take objectively reasonable measures. But in order to get there, they have to be aware objectively of the risk that Mr. Pittman was likely to attempt suicide on that evening in December of 2007. So, Mr. Gilbert, this is, I'm going to beat this dead horse a little bit. That's okay. So, in my ideal world, I think, trying to take into account what's a rather fine-tuned distinction Kingsley asked us to make, you know, what you are subjectively aware of, what objective reasonableness comes in for. But paragraph two seems to take care of their personal knowledge in a couple of different ways. And I am not going to pick at paragraph two right now. I've been wondering, ever since I picked up these briefs, suppose the district court had just three, and it had just said Eaton and Werner failed to take reasonable measures to prevent plaintiff and all these other things you can take into account. I would be a lot happier with that, I'll tell you, in light of the way these cases have gone. So, I keep defaulting back to whether the inclusion of the word consciously should be written off as one of those harmless errors because taken as a whole, you know, maybe the jury got it and we shouldn't worry about this, or whether this so steered the jury in the Eighth Amendment direction that maybe there's a problem we ought to correct. That's where I am on this. Oh, and I understand that, Your Honor. And I'm, of course, on the other side of that because I think that, you know, they have a whole set of instructions that they pay attention to, including the state court claims. And I think that the jury, I don't think the jury would be misled by the word consciously, because consciously, you know, who knows how the jurors interpreted that. But clearly. Doesn't that worry you a little bit? Well, no, because we won. But I do think the jury had plenty of opportunity if they thought these guys didn't do something they should have done, that would, by using the word reasonableness so often in these instructions, that they wouldn't have been prevented from finding for the plaintiff. I don't think the question is how many times the word reasonableness appears throughout the totality of the instructions, because I think you have to believe that the jury is going to focus on the instruction in question. And what if, what if the group of us on the Zoom today, we're sitting in the jury room, and I said to everyone, well, I sure don't think that either Werner or Eaton consciously, you know, were walking Mr. Pittman into a suicide attempt. I don't think that they were consciously doing that. Isn't that precisely the kind of thinking that we, the kind of reasoning that, you know, Kingsley, Miranda, et cetera, is trying to work against under the due process clause? Well, as I read the cases, Your Honor, I think that it actually fits, because if we're thinking about consciously, you know, the first half of the test that has been developed post-Miranda is that the defendants have to act purposely, knowingly, or recklessly. And to me, that's what the word consciously does in the context of this instruction, which of course, you know, the judge was trying to get as close to 719 pattern instruction as possible. And I think it actually supports a contention that it is close, if not there, with regard to meeting the Miranda test and the way it's been developed in the subsequent cases. Thank you. I mean, if you have anything else, you have a little less than a minute, but I think we've explored this point. No, thank you, Your Honor. I think the rest of it, the brief speaks for itself. Thank you. All right. Thank you very much, Mr. Gilbert. I think you have about a minute, Mr. Anderson. Well then, Your Honor, I'd simply like to say instead of the awareness and the strong likelihood and the suspicion, paragraph three could have cleared all this up if it had said the defendant did not take the reasonable measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risks, making the consequences of defendant's conduct obvious. That is what the Ninth Circuit has decided should be done based upon the Gordon case, and they have removed the awareness language, and they have removed the strongly suspected language, and they have removed the consciousness language from their pattern instruction in order to meet Kingsley. I believe that that's their 931 failure to protect pattern instruction. I think it's almost identical to the instruction that I submitted, and that is the appropriate standard. You need an objective standard, and the jury can decide this was objectively unreasonable, but they didn't know, and I think that's actually what they did, particularly given the strong subjective argument that the counsel for defendants jumped on after this instruction was given. I have nothing further, Your Honor. All right. Well, thank you to both counsel. The court will take this case under advisement.